### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

**DAYS INN WORLDWIDE, INC.**, a
**Delaware Corporation,**

                              **Plaintiff,**

**v.**

**YAMUMA KUNJ, LLC**, an Indiana
**Limited Liability Company,**

                              **Defendant.**

Civ. No. 13-cv-**6053** (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of Plaintiff Days Inn World Wide, Inc. ("DIW") for default judgment against Defendant Yamuna Kunj, LLC ("Yamuna") pursuant to Fed. R. Civ. P. 55(b). (Dkt. No. 11) For the reasons set forth below, I will enter a default judgment. DIW is awarded $4,548.35 in attorneys' fees and costs. I also find that DIW has established an entitlement to $114,477.30 in outstanding Recurring Fees. I have, within my discretion, opted to deny enforcement to a liquidated damages provision under which DIW claimed eight years of future payments. Under the particular circumstances of this case, it would constitute a penalty rather than a *bona fide* estimate of damages. Post-judgment interest from this date will be awarded at the appropriate rate in accordance with 28 U.S.C. § 1961.

## I.    BACKGROUND

The Agreement

DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl., Dkt. No. 1, ¶1) Yamuna is an Indiana-based limited liability company with its principal place of business in Anderson, Indiana. Yamuna's constituent members are Upendrakumar Patel and Minal

1

Patel (the "Patels"), both of whom are citizens of Indiana. The Patels are not party to this action.

On September 20, 2004, DIW entered into a License Agreement (the "License Agreement") with Yamuna for the operation of a 112-room Days Inn guest lodging facility located at 5901 South Scatterfield Road in Anderson, Indiana. (Pl. Aff. in Supp. of Mot. for J. by Default ("Pl. Aff."), Dkt. No. 11-3, ¶3) Under Section 7, Section 18, and Schedule C of the Franchise Agreement, Yamuna was required to make periodic payments to DIW for, *inter alia*, royalties, system assessment fees, taxes, interest, and access to its central reservation system (collectively, "Recurring Fees"). (*Id.* at ¶5)  Section 7.3 of the Franchise Agreement stated that the interest on such Recurring Fees would accrue at the rate of 1.5% per month for all payments that came past due. (*Id.* at ¶6)

Section 11.2 lists the circumstances under which DIW could terminate the License Agreement, including:

> (1) [failure to] cure a default as provided in Section 11.1...
> (7) [failure to] pay debts as they come due in the ordinary course of business...
> (11) [receipt of] two or more notices of default from [DIW] in any one year period (whether or not you cure the defaults)[.]

(*Id.* at ¶9) In the event that the License Agreement is terminated pursuant to Section 11.2, Section 13.2 provides that Yamuna must pay "all amounts owed to [DIW]" no more than 10 days after termination. Such amounts include all "Recurring Fees on Gross Room Revenues accruing while the Facility is identified as a 'Days Inn.'" (*See* License Agreement, Dkt. No. 11-3, at 23) Additionally, under Section 12, Yamuna is obligated to pay liquidated damages within 30 days after termination in an amount equal to "the sum of accrued Royalties and Basic Services Charges during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term...at the date of termination, whichever is less.") (*Id.* at 22)

Section 17.4 states that if legal action is necessary "to enforce this Agreement or collect amounts owed under this Agreement," then the "non-prevailing party will pay all costs and expenses, including reasonable attorneys; fees." (*Id.* at 27)

On the same day the parties executed the License Agreement, the parties also executed an addendum agreement (the "Indiana Addendum") that modifies certain aspects of the License Agreement. Section 1 of the Indiana Addendum states: "The laws of the State of Indiana supersede any provisions of the Offering Circular, the License Agreement or New Jersey law if such provisions are in conflict with Indiana law." (Indiana Addendum, Dkt. No. 11-3, at 50)

Section 4 of Indiana Addendum amends the liquidated damages provision contained in the License Agreement. It states in full:

Section 12 of the License Agreement is amended by the deletion of all references to liquidated damages and termination penalties and the addition of the following language to the original language that appears therein:

Notwithstanding any such Termination, and in addition to your other obligations, or in the event of Termination, or cancellation of the License Agreement under any of the provisions therein, you shall be, continue and remain liable to us for any all damages we have sustained or may sustained by reason of such default or defaults and the breach of the License Agreement on your part until the end of the Term.

At the time of such Termination, you covenant to pay to us within 10 days after demand compensation for all damages, losses, costs and expenses (including reasonable attorney's fees) incurred by us and/or amounts which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement but for such termination. This does not constitute a waiver of your right to trial on any of the above matters.

(*Id.*)

<u>The Alleged Defaults and Termination</u>

DIW alleges that beginning in 2011, Yamuna failed to make certain payments required under the License Agreement. (Pl. Aff., Dkt. No. 11-3, ¶13).

On May 24, 2011, DIW sent Yamuna a letter stating that it owed $70,348.95 in outstanding Recurring Fees. (*Id.* at ¶14) The letter put Yamuna on notice that it was formally in default, and warned that if it did not cure the default within 10 days, DIW reserved the right to terminate the License Agreement. (*Id.*)

Yamuna allegedly failed to timely cure the default. On October 14, 2011, DIW sent a second letter stating that Yumana's account was now past due in the amount of $92,352.50. (*Id.* at ¶15) The letter again advised that if Yamuna failed to cure the default within 10 days, DIW would terminate the License Agreement. (*Id.*)

On November 2, 2011, DIW sent a final letter notifying Yamuna that it had terminated the License Agreement as of that date. (*Id.* at ¶16) The letter stated that Yamuna owed $94,344.30 in Recurring Fees at the time of termination. It also informed Yamuna that it is liable for "damages of $135,517.69 as specified in the Agreement." (Letter from DIW to Yamuna, Nov. 2, 2011, Dkt. No. 11-3, at 93) DIW demanded that Yamuna immediately make these payments. (*Id.*)

<u>The Present Action</u>

DIW now seeks a default judgment against Yamuna in the amount of $318,833.80. Specifically, DIW seeks: (1) $114,477.30 in damages for outstanding Recurring Fees, which includes interest calculated at the rate of 1.5% per month set forth in Section 7.3 of the License Agreement; (2) $135,517.69 in what DIW describes as "actual damages," which is the amount it estimates that Yamuna is required to pay under Section 4 of the Indiana

Addendum; (3) $64,290.46 in interest on such "actual damages;" and (4) $3,900 and $648.35 in attorneys' fees and costs, respectively.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## II.   ANALYSIS

The entry of a default judgment is "left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at * 2.

## A. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service of a corporate entity, such as Yamuna, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made:

> [B]y serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C) by:

> [M]ailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(3).

Here, despite diligent efforts and inquiry, DIW was unable to personally serve Upendrakumar Patel or Minal Patel, or any other person authorized to receive service of process on behalf of Yamuna. (Cert. of Bryan Couch in Supp. of Mot. for J. by Default ("Couch Cert."), Dkt. No. 11-2, ¶5, Ex. A) DIW did, however, successfully serve the Summons and Complaint on November 18, 2013 via certified and regular mail as permitted by N.J. Ct. R. 4:4-4(b)(3). (*Id.* at ¶6, Ex. B). Yamuna's time to respond to the Complaint has long since expired. On March 17, 2014, the clerk has default. (Dkt. No. 7) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

## B. Three Factor Analysis

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

7

The evaluation of the first factor is complicated, of course, by Yamuna's failure to answer or oppose this motion. In any event, my independent review of the record does not suggest that the claims asserted by DIW are legally flawed or that Yamuna could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that DIW has stated a claim for relief.

The Complaint contains four causes of action, which, in essence, amount to a single claim that Yamuna breached the License Agreement. Under Indiana law, a prima facie case for breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the breach. *See Auto-Owners Ins. Co. v. C & J Real Estate, Inc.*, 996 N.E.2d 803, 805 (Ind. Ct. App. 2013) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind.Ct.App.1993).[1] Those elements are satisfied here.

The facts alleged in the Complaint, along with the declaration submitted in support of DIW's motion and the exhibits annexed thereto, establish: (1) that the parties created a valid and enforceable contract in the form of License Agreement; (2) that the License Agreement was breached by Yamuna's failure to pay certain of the Recurring Fees owed to DIW; and (3) that DIW accrued damages as a result of this breach. In sum, the facts alleged by DIW state a claim for breach contract. I cannot discern a meritorious defense to this claim from the record before me.

The second and third factors also weigh in favor of default. Yamuna was properly served on November 18, 2013—nearly 18 months ago—but has failed to appear and defend itself in any manner. It is clear that DIW has been prejudiced by this dereliction because it has been "prevented from prosecuting

---

[1]    The elements of a breach of contract claim are identical under New Jersey law. *See Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

[its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff). Additionally, unless there is evidence to the contrary, Yamuna's failure to answer the Complaint is sufficient to prove its culpability in the default. *Id.* In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the Complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, each of the three factors support the entry of default judgment against Yamuna. I therefore find that default judgment is warranted.

## C. Remedies

DIW seeks an award of $318,833.80, which comprises the following four forms of monetary relief: : (1) $114,477.30 in damages for outstanding Recurring Fees, which includes interest calculated at the rate of 1.5% per month set forth in Section 7.3 of the License Agreement; (2) $135,517.69 in "actual damages" under Section 4 of the Indiana Addendum; (3) $64,290.46 in interest on such "actual damages"; and (4) $3,900 and $648.35 in attorneys' fees and costs, respectively.

### 1.   Outstanding Recurring Fees

I will grant DIW's request for the amount owed as Recurring Fees, as set forth in Section 7, Section 18.4, and Schedule C of the License Agreement. DIW states in its affidavit that Yamuna failed to meet its financial obligations "[b]eginning in 2011." (Pl. Aff. ¶13) The 2011 date, however, clearly relates to the *notices* of default, the first of which was dated May 24, 2011. The attached itemized statements of account detail unpaid Recurring Fees dating back to

9

January 2010. (*See id.*, Ex. G, Dkt. No. 11-3, at 112). The outstanding balance on the account is $114,477.30.

### 2 & 3.      Section 4 Claim for Eight Years of Future Fees

DIW seeks damages equivalent to eight years of future Recurring Fees, plus interest, under Section 4 of the Indiana Addendum to the License Agreement ("Section 4"). Section 4 states that, in the event of default, Yamuna remains liable to DIW for "all…amounts which would otherwise be payable for and during the remainder of the unexpired Term of the License Agreement." (Dkt. No. 11-3, at 50)

DIW asserts that it is owed $135,517.69 based on amounts that would have been paid over the unexpired eight-year portion of the 15-year agreement. DIW characterizes this Section 4 amount as "actual damages." DIW also seeks $64,290.46 in interest on those "actual damages." It calculated the interest by applying the 1.5% per month interest rate set forth in Section 7.3 for the period between December 2, 2011 (30 days following the date of termination), through July 21, 2014 (the original return date of this motion). The $135,517.69 "actual damages" plus $64,290.46 interest yields a total of $199,808.15.

Exercising my discretion, I will decline to enforce Section 4. Calling a figure "actual damages" does not make it so. I find that Section 4 amounts to an unenforceable liquidated damages clause. The terms of Section 4, its relationship to other provisions in the License Agreement, and DIW's own interpretation of this provision all support this conclusion.

The placement of Section 4 in the agreement suggests that it is intended to function as a liquidated damages provision. Section 4 expressly states that it is amending Section 12 of the License Agreement, which is the section that contains the formula for calculating liquated damages. (*Id.*; License Agreement, Dkt. No. 11-3, at 22) To be sure, Section 4 purports to "*delet[e]* all references to liquidated damages" in Section 12 and to replace them with the language

10

quoted above. (Indiana Addendum, Dkt. No. 11-3, at 50 (emphasis added)). But under Indiana law, the label applied to a particular contract provision is not determinative. *See Rogers v. Lockard*, 767 N.E.2d 982, 991 (Ind. Ct. App. 2002) ("The use of the words 'damages,' 'penalty,' 'forfeiture,' and 'liquidated damages' are not conclusive, but should be considered in connection with other provisions in the contract to determine the nature of the provision.")

"A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages." *Coffman v. Olson & Co., P.C.*, 906 N.E.2d 201, 209 (Ind. Ct. App. 2009) (quoting *Gershin v. Demming*, 685 N.E.2d 1125, 1127-28 (Ind. Ct. App. 1997)). Section 4 does not set out a fixed sum. It does provide, however, that if the License Agreement is terminated following Yamuna's default, Yamuna must pay within 10 days of DIW's demand "all...amounts" that it would have otherwise owed over the remainder of the Agreement's term. (Indiana Addendum, Dkt. No. 11-3, at 50) Section 4 says nothing about how this amount should be calculated.

DIW proffers a method of calculation that differs very little from the Section 12 "liquidated damages" provision, except in that it is far harsher. DIW calculates its Section 4 damages "by multiplying the average daily Recurring Fees that should have been paid by Defendant over a 365 day period prior to termination by the number of days remaining in the term of the License Agreement." (Pl. Aff., ¶19) Compare Section 12, which provides that Yamuna will pay "within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Royalties and Basic Service Charges during the immediately preceding 24 full calendar months (or the months remaining in the unexpired Term...at the date of termination, *whichever is less*). (License Agreement, Dkt. No. 11-3, at 22) (emphasis added)

11

Section 12, then, would have required Yamuna to pay Recurring Fees, but caps the damages at two years' worth. Section 4—as DIW reads it—simply removes the cap. DIW asks Yamuna to pay, not two, but eight years' worth of projected Recurring Fees. Theoretically, had Yamuna defaulted only one year after it signed the 15-year agreement, it would be liable under Section 4 for an amount equal to 14 times the Recurring Fees it accrued during that year.

Liquidated damages provisions are enforceable only where "the nature of the agreement is such that when a breach occurs the resulting damages would be uncertain and difficult to ascertain." *Coffman*, 906 N.E.2d at 209. But even where damages are difficult to calculate *ex ante*, a stipulated sum "will not be allowed as liquidated damages unless it may fairly be allowed as compensation for the breach." *Id.* "[W]here the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages." *Id.*

I find that the $199,808.15 sum claimed by DIX is grossly disproportionate to the actual damages resulting from Yamuna's breach. DIW has not established that Recurring Fees would have been similar for the next eight years. DIW has not established that it made any efforts to, for example, find a replacement licensee, or otherwise mitigate its projected "actual damages."[2] The original Section 12 liquidated damages provision at least appears to be an effort to estimate DIW's recoupment costs, with due consideration for the duty to mitigate and the unpredictability of future profits.[3] To enforce Section 4 for the unexpired eight years of a fifteen year

---

[2]   Although I do not rely on this information, as a matter of curiosity, I ascertained from Google Maps that the site is no longer a Days Inn, but that there is another Days Inn close by on the same street, at 5706 S. Scatterfield Road. (Search: days inn near Anderson, IN)

[3]   *See, e.g., Days Inn Worldwide, Inc. v. BFC Mgmt., Inc.*, 544 F. Supp. 2d 401, 407 (D.N.J. 2008) (upholding a liquidated damages clause that "represent[ed] a compromise between the three years typically required to bring a new construction

agreement would be excessive. It amounts to a license for DIW to sit on its hands and extract its full measure of profit from a failed business.

DIW's calculation is excessive for another reason. In accelerating eight years of future payments, Days Inn does not discount them to present value. And on top of that, it actually seeks *interest,* running from November 2, 2011, on *future* payments, which, but for the default, would not have even come due until years in the future. That does not line up with any reasonable expectation of profit that DIW may have had when it entered into the agreement.

Exercising my discretion on this motion for a default judgment, I find that, under the circumstances, Section 4 imposes a penalty. I therefore will not enforce Section 4.[4] *See, e.g., Harbours Condo. Ass'n, Inc. v. Hudson,* 852 N.E.2d 985, 993 (Ind. Ct. App. 2006) (holding that liquidated damages of $74,154.24 were "grossly disproportionate to the actual loss" of $7,117.29 and that the liquidated damages provision was therefore unenforceable).

### 4.   Attorneys' Fees and Costs

Finally, as to attorneys' fees and costs, I adopt DIW's analysis. DIW has adequately documented its attorneys' fees, which do not seem unreasonable or

---

replacement into the chain, and the eighteen months required to build up the revenue stream of a conversion replacement that could hypothetically be in place immediately after termination.")

[4]   New Jersey law compels the same conclusion. Under New Jersey law, "[t]he overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances." *MetLife Capital Fin. Corp. v. Washington Ave. Associates L.P.,* 159 N.J. 484, 495 (1999). For the reasons stated in the text, I find that the amount of damages sought under Section 4 is unreasonable. I do not believe that these general principles of New Jersey law "conflict" with Indiana law for purposes of the saving clause in the Indiana Addendum. *See* Indiana Addendum, Dkt. No. 11-3, at 50.

disproportionate. (*See* License Agreement, Section 17.4, Dkt. No. 11-3, at 27 (giving prevailing party the right to recover reasonable attorneys' fees); Pl. Aff. ¶21; Couch Cert. ¶¶12-13, Ex. D) I will therefore award $4,548.35 in attorneys' fees and costs.

## III.   CONCLUSION

For the foregoing reasons, judgment will be entered in favor of Plaintiff DIW. DIW is awarded outstanding Recurring Fees in the amount of $114,477.30. DIW is also awarded $4,548.35 in attorneys' fees and costs.

An appropriate order and judgment will be filed.

Date:  May 8, 2015

KEVIN MCNULTY, U.S.D.J.